[Civ. No. 3107.  Third Appellate District.—January 30, 1928.]

CLOVERDALE UNION HIGH SCHOOL DISTRICT OF SONOMA COUNTY, Respondent, v. W. J. PETERS, Appellant.

W. F. Cowan and A. W. Hollingsworth for Appellant.

F. W. McConnell for Respondent.

FINCH, P. J.—The complaint alleges that during the fiscal year beginning July 1, 1924, the "defendant has repeatedly and falsely claimed and asserted to the said plaintiff and to the members of its board of school trustees, and to the students in attendance at said school, and has made public declaration, that he was at all times since July 1, 1924, and is now the regularly employed principal of the said school for the said present school year, . . . at a salary of $200 per month; . . . that the said claims and assertions so made . . . have caused and are now causing, and will continue to cause, unrest, disturbance and confusion in said school and among the students thereof and the citizens of said school district, . . . and does and will continue to interfere with the best interests and welfare of said school and the students in attendance thereat, . . . and since the beginning of the present school year there has existed and now exists an actual controversy between the said plaintiff and its said board of school trustees, with the said defendant, relating to the legal rights and duties of the said respective parties, and particularly relating to the alleged rights and claims of the said defendant herein." The prayer is, in substance, for a judgment declaring the rights of the parties in the premises, "including a determination of any and all questions of construction or validity arising under said defendant's alleged employment and the pretended contract so claimed and asserted by him."

The defendant, as a defense and by way of counterclaim, alleged that he was regularly employed by the plaintiff on May 5, 1924, as principal of the high school for the fiscal year mentioned at a salary of $2,400 a year; that at the opening of school in that year he made demand "that he be allowed to perform his duties as principal of said high school and that he was present and ready, able and willing and at all times herein mentioned, and that he is now ready, able and willing to assume and discharge the duties of principal of said high school, and that notwithstanding said high school board refused and ever since and still refuses to permit defendant to discharge and perform his duties under said employment." The defendant also alleged that "for more than two years next preceding said 5th day of May, 1924, he has served successfully . . . as joint principal of the Cloverdale Union School and of the Cloverdale Union

High School''; and that ''there is now due, owing and unpaid from plaintiff to defendant the total sum of $2,400,'' for which sum the answer prays judgment against the plaintiff.

The complaint was filed December 5, 1924, and the answer June 3, 1925. The trial was had on June 17, 1925, and ''the cause was submitted to the court for its decision upon certain stipulated facts and evidence.'' Judgment was entered in favor of plaintiff and defendant has appealed. Counsel for the plaintiff stated substantially the following facts at the trial:

During the fiscal year ending June 30, 1924, the defendant was the principal of the plaintiff high school and of the Cloverdale Union Elementary School. Each school is governed by a board of five members. May 5, 1924, the members of the two boards met at the same place and separately elected their respective officers for the ensuing year. Thereupon the ''following proceedings were had: . . . Grant (a member of the elementary school board) made a motion that we act as a joint board, and Mr. Hall (a member of both boards) seconded it. Then they appointed Burrough (president of the high school board) to act as chairman of the meeting. After a brief discussion, the motion (that they act as a joint board) was put and carried by secret ballot, six voting for and four against. Then motion by Grant, seconded by Hall, that Peters be employed as principal of both high and grammar schools for the ensuing year at the former salary. Then motion was submitted and secret ballot taken, resulting in vote of six for and four against. There was no regular motion or order for adjournment, but after the foregoing the meeting simply dispersed. Thereupon Mr. Grant produced the form of notice of employment of Peters as principal, and this was then signed as shown by the file in the county superintendent of school's office.'' The notice to which counsel referred is in the usual form of notices of employment of teachers which, by the provisions of section 1609, subdivision 5 (a), of the Political Code, trustees are required to give the county superintendent of schools. It was signed by the president and the clerk of the high school board and by one other member thereof and by the president and the clerk and a third member of the elementary school board. In addition to

those mentioned, it was signed by Hall as a member of the elementary school board, but not as a member of the high school board. Thereafter the defendant signed the usual form of acceptance appearing upon the instrument. It may be conceded that the instrument so executed was sufficient in form to constitute a valid contract of employment. The important question is whether its execution was authorized. June 3, 1924, the high school board adopted a resolution to the effect that the services of defendant would not be required for the ensuing school year and served notice upon him to that effect.

After counsel for the plaintiff had stated the foregoing facts, together with others which are not deemed material or are otherwise shown, counsel for defendant said: "We will stipulate that that is a correct history." It was further stipulated, subject to all legal objections made by counsel for defendant: "That . . . Peters was not present at the meeting of May 5, 1924, at the time of the signing of the 'notice of employment'; that the minutes of the meeting of the board of trustees of the Cloverdale Union High School District, . . . held on May 5, 1924, contain no reference whatever to the employment of W. J. Peters as principal, . . . nor do said minutes refer in any manner to any employment of Mr. Peters, or to any contract between said board and said defendant Peters"; that three members of the high school board "would each testify that he did not at said meeting on May 5, 1924, vote in favor of employing W. J. Peters as principal; . . . that each of them would testify that no vote was taken of the board of trustees of Cloverdale Union High School District relative to the employment of W. J. Peters, as principal, other than the secret ballot taken in the so-called joint meeting of the two boards; . . . that each of them would testify that he never consented or agreed to the employment of said Peters as such principal, . . . unless the signing of said notice of employment was consent"; and that the defendant would testify that on May 6, 1924, the president of the high school board said to him, "We have signed the contract or paper and have placed it in your desk," and that three copies thereof were there found on said day.

█ The action was brought under the provisions of section 1060 of the Code of Civil Procedure, providing for

declaratory relief. In appellant's opening brief it is said: "Appellant contends that under the plain provisions of the statute, before a party may seek declaratory relief, he must allege and show relationship between himself and the defendant under a contract, will, or other written instrument, or in respect to property, and that this fact is not shown by the complaint, and in fact is expressly negatived." It does not appear necessary to decide the question thus presented. The defendant's counterclaim tenders the same issues as the plaintiff's complaint. The plaintiff did not demur or in any manner object to the counterclaim and the defendant was entitled to a trial of such issues, even if the plaintiff had desired or attempted to dismiss the action. (Code Civ. Proc., sec. 581, subd. 1.) In *Merchants Heat & L. Co.* v. *James B. Clow & Sons,* 204 U. S. 286 [51 L. Ed. 488, 27 Sup. Ct. Rep. 285], it is said: "By setting up its counterclaim the defendant became a plaintiff in its turn, invoked the jurisdiction of the court in the same action, and, by invoking, submitted to it. . . . The defendant, if he elects to sue upon his claim in the action against him, assumes the position of an actor and must take the consequences. . . . After the cross claim is set up the plaintiff is not permitted to dismiss his suit without the consent of the defendant or leave of court granted for cause shown." The judgment against the defendant on his counterclaim is a complete adjudication of the rights of the parties and therefore it is immaterial whether the plaintiff had a cause of action under section 1060.

■ "Where power to employ a teacher is in a school board, a valid contract with a teacher cannot be made by members of the board without a meeting and formal action." (24 R. C. L. 615; Pol. Code, sec. 1607, subd. 1; *McGinn* v. *Willey,* 6 Cal. App. 111 [91 Pac. 423]; *Ryan* v. *Humphries,* 50 Okl. 343 [150 Pac. 1106, L. R. A. 1915F, 1047, and note].) ■ "Where the terms of a contract with a teacher are properly agreed upon at a regularly convened meeting of the school board, it is unnecessary that the contract be executed at such meeting, but it may be subsequently signed and executed by the parties thereto, and it is immaterial that the officers of the board sign at different times." (35 Cyc. 1084.)

**[4]** The court was justified in finding from the stipulated facts that the alleged contract is invalid. The high school boards did not authorize the alleged joint meeting of the two boards. The members of both boards being together, a secret vote was taken upon the question of organizing as a joint board. Four voted against such organization. ■ In the absence of evidence as to how the members voted, it cannot be inferred from the result of the vote that a majority of the members of the high school board voted in favor of such organization as a joint board, and clearly the high school board could not delegate the power of determining that question to the members of the elementary school board. (*Webster* v. *Board of Education,* 140 Cal. 331 [73 Pac. 1070].) Upon the question of employing defendant as teacher, the secret ballot again stood six to four, and it was stipulated that three members of the high school board would testify that they voted against such employment. The court was justified in accepting such stipulation as proof that such members so voted. As upon the question of organization as a joint board, the high school board could not delegate to the elementary school board the power to employ or to participate in the employment of a principal of the high school, but the law contemplates that each board must determine for itself, in the manner provided for the determination of other questions, whether or not it will agree to the employment of the same person as principal of both schools and who such person shall be. The alleged contract was signed by a majority of the members of each board. Had this been done while such boards were in session it might be argued logically that it was a sufficient compliance with the law, but the contract was "produced" and signed after "the meeting . . . dispersed." It is immaterial whether the time intervening between the dispersion of the meeting and the signing of the contract was short or long. The contract was neither authorized nor signed at a session of the high school board and therefore it was not valid or binding on the plaintiff. ■ The case has been argued upon the theory that the authority of a high school board and an elementary school board to unite in the employment of a principal is given by section 1589c of the Political Code, which reads as follows:

"Whenever in their judgment it may be deemed advisable, the board of trustees for any union or joint union school district may unite with the trustees of any other school district, single, union or joint, in the employment of a supervising principal, who shall devote such time to the supervision of instruction in the several school districts and shall receive such compensation from each board of trustees as may be agreed upon by them."

It will be observed that the provisions of the section quoted relate to elementary not to high schools. Section 1741, in article XIV, relating to high schools, provides: "Except as in this article, or in article XV of this chapter, otherwise provided, the powers and duties of high school boards shall be such as are now or may hereafter be assigned by law to boards of education or boards of school trustees in school districts." Section 1743 in the same article XIV, provides: "The principal of any high school may act as principal of any elementary school situated in said high school district; or as supervising principal of two or more elementary schools situated within said high school district, without regard to the number of teachers employed in each of said elementary schools, if so desired by the trustees of said elementary school district or districts and the high school board of trustees." Authority to employ the same person as principal of a high school and an elementary school is given by this section rather than by section 1589c, and it is clear, from the provisions of section 1743, that a principal of a high school may not act as principal of an elementary school without the consent of a majority of the high school board, given in the manner provided by law.

Appellant contends that the respondent is estopped to assert the invalidity of the alleged contract. This contention is based on the assertion that "the act of employing a principal is a proprietary or private act and not a governmental act." Attention has not been called to any private act in which a school district may engage. "The management of the public schools is a state affair, and school districts at most are but a state agency for that purpose." (*Board of Education* v. *Davidson,* 190 Cal. 162, 168 [210 Pac. 961].) Appellant relies on the case of *McCormick Lumber Co.* v. *Highland School District,* 26 Cal. App. 641 [147 Pac. 1183], where it is said: "The question presented

is as to whether, admitting the informalities of notice in the calling of the meeting and advertising for bids for the construction of the building, the school district, having received and appropriated the benefit of the labor and materials supplied the contractor, is estopped from maintaining a defense based upon the irregularities noted. We think, under the circumstances of this case, the contractor or his assignee, was entitled to recover." It has been held that where a teacher renders services under an informal contract "the district will not be permitted to avail itself of the fruits of his labor and then refuse to pay for it." (24 R. C. L. 615; *Scott* v. *Williamstown School District No. 9,* 67 Vt. 150 [27 L. R. A. 588, 31 Atl. 145].) The facts herein are wholly unlike those in *McCormick Lumber Company* v. *Highland School District, supra,* or in the Scott case. The defendant was given timely notice, long before the opening of the school, that his services would not be required during the ensuing year. He performed no services whatever for the plaintiff under the alleged contract. One of the considerations for the defendant's agreement to act as principal of the elementary school was that he was also to be employed by the plaintiff as principal of the high school, a fact which the elementary school board knew. The purported agreement of the high school to employ him being invalid, there was such a partial failure of consideration as entitled him to rescind his agreement to act as principal of the elementary school. (Civ. Code, sec. 1689, subd. 4.) It is simply a case of an invalid contract with a public agency of the state, under which no services were performed. None of the cases cited by appellant hold that a public agency is estopped under such circumstances.

Appellant complains of the part of the judgment which enjoins him from "claiming or asserting any employment by plaintiff . . . during said school year beginning July 1, 1924." Judgment was entered December 30, 1925. This was long after the end of the fiscal year for which the defendant claims that he was employed. The other parts of the judgment completely dispose of the case against him. The part to which objection is made, therefore, is of no possible effect and adds nothing to the judgment.

The judgment is affirmed.

Hart, J., and Plummer, J., concurred.