[Crim. No. 4228. In Bank.—August 24, 1939.]

In the Matter of the Application of E. H. MEANS for a Writ of Habeas Corpus.

John J. Hamlyn for Petitioner.

Earl Warren, Attorney-General, Jess Hession, Deputy Attorney-General, C. C. Carleton, C. R. Montgomery, Frank B. Durkee and Robert E. Reed, as *Amici Curiae,* on Behalf of Petitioner.

Hugh B. Bradford, City Attorney, Butler, Van Dyke & Harris and B. F. Van Dyke for Respondents.

EDMONDS, J.—By a writ of *habeas corpus,* E. H. Means seeks his discharge from custody under a warrant of arrest issued upon a complaint charging him with a violation of an ordinance of the city of Sacramento requiring that every person performing labor as a journeyman plumber procure a certificate of registration.  The petitioner alleges in support of his application that at the time of his arrest he was a civil service employee of the State of California engaged in the work of a plumber at the California State Fair grounds in the city of Sacramento, and that, as such employee, the ordinance does not apply to him. These facts are not denied; therefore, the only question presented for decision is whether a state employee, working entirely on state property, may be punished for his failure to comply with the municipal requirement.

For many years there has been in effect "an act to provide for a general system, based upon investigation as to merit, efficiency and fitness, for appointment to and holding during good behavior of office and employment under state authority . . . " (Stats. 1913, chap. 590.) Under an amendment to the Constitution approved by the people in 1934 "permanent appointments and promotion in the state civil service shall be made exclusively under a general system based upon merit, efficiency and fitness as ascertained by competitive examination". (Art. XXIV, sec. 1.) The State Civil Service Act (Stats. 1937, chap. 753), adopted pursuant to the constitutional amendment provides in detail the method by which persons may secure and retain employment by the state. Among other requirements, the statute prescribes the following: "Eligible lists shall be established as a result of free competitive examinations open to all persons who lawfully may be appointed to any position within the class for which such examinations are held and who meet the minimum qualifications requisite to the performance of the duties of such position as prescribed by the specifications for the class or by rule of the board." (Stats. 1937, chap. 753, sec. 81.) It is conceded that the state personnel board, which is charged with the duty of administering these provisions, certified the petitioner for the position to which he was subsequently appointed.

By its charter, the city of Sacramento is given the power "to regulate the construction of and the materials used in all buildings . . . ; to regulate . . . the manner of construction and location of drains and sewers . . . ; the materials and methods used for piping buildings for water; . . . to regulate and prescribe all methods and materials used for the plumbing of all buildings, . . . and to provide for the examination and licensing of all persons . . . who shall engage in or work at the business of plumbing . . . " (Sacramento Charter, sec. 9; Stats. 1921, p. 1919.) Under the state Constitution it may "make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." (Art. XI, sec. 11.)

The ordinance which the petitioner is charged with violating provides: "It shall be unlawful for any person to perform labor as a journeyman plumber . . . for the purpose of repairing or installing plumbing work as defined in sec-

tion 1 of this ordinance unless such person first procures from the Health Officer of said city a Certificate of Registration authorizing said person to labor as such mechanic." (No. 496, 4th series, sec. 3.) To procure this certificate the applicant must submit himself for examination by the examining board as to his qualifications; he must also execute and deliver a bond of $2,500 in favor of the city of Sacramento conditioned that the whole or part of that sum shall be paid to any person who shall suffer damage by reason of a violation of any provision of the ordinance. Admittedly, the petitioner did not secure the certificate nor file the bond required by the city.

It is petitioner's contention that the State of California has prescribed a complete method by which qualified persons may become employees in the civil service; that this legislation occupies the field exclusively and, as a result, any local ordinance prescribing additional requirements for such employees are invalid as to them. In determining the necessary qualifications for employees, says the petitioner, the state is dealing with a matter which is its exclusive field and concern, and the ordinance should not be construed in derogation of sovereignty.

As against these contentions, the respondent justifies his position under provisions of the Constitution. He asserts that under article XI, sections 6 and 8, a chartered city has the exclusive right to regulate municipal affairs; that the general regulation of plumbing within the limits of a city is a municipal affair, and that the city has exercised its right by providing in its charter that it may "provide for the examination and licensing of all persons . . . who shall engage in or work at the business of plumbing either as a master or as a journeyman plumber". (*Supra*, sec. 9.) A second point urged is that by another section of the Constitution the city has the power to enact local police regulations "not in conflict with general laws" (art. XI, sec. 11), and that as there is no general state law on plumbing the city's ordinance must be upheld.

The constitutional amendment of 1934 and statutes relating to civil service, taken as a whole, provide a comprehensive plan for the selection of state employees after examination to ascertain their qualifications for particular positions. And although the Sacramento ordinance does not purport

to prescribe conditions with which one must comply before being selected by the state for a civil service position, its construction as contended for by the respondent would bring about this result. If one who has been employed by the state may not work on state property within a municipality without the consent of the municipality obtained after examination, the city has, in effect, added to the requirements for employment by the state, and restricted the rights of sovereignty.

There can be no question concerning the power of the state in its proprietary capacity to lay down the qualifications for its employees. It acts in an exclusive field (*Atkin* v. *Kansas,* 191 U. S. 207 [24 Sup. Ct. 124, 48 L. Ed. 148]; *Heim* v. *McCall,* 239 U. S. 175 [36 Sup. Ct. 78, 60 L. Ed. 206, Ann. Cas. 1917B, 287]), and is not subject to the legislative enactments of subordinate governmental agencies. For example, it has been held that a state has no power to require employees of the United States to obtain a license to operate an automobile. "Such a requirement," said the Supreme Court of the United States, "does not merely touch the Government servants remotely by a general rule of conduct; it lays hold of them in their specific attempt to obey orders and requires qualifications in addition to those that the Government has pronounced sufficient. It is the duty of the Department to employ persons competent for their work and that duty it must be presumed has been performed." (*Johnson* v. *State of Maryland,* 254 U. S. 51, 57 [41 Sup. Ct. 16, 65 L. Ed. 126].) Furthermore, considering the language of the particular enactment now in question, it is a rule of statutory construction based upon sound public policy that the state is not bound by the provisions of a charter or ordinance unless it is mentioned specifically or by necessary implication. (*Estate of Miller,* 5 Cal. (2d) 588 [55 Pac. (2d) 491]; *Sunny Slope Water Co.* v. *City of Pasadena,* 1 Cal. (2d) 87 [33 Pac. (2d) 672]; *Marin Municipal Water Dist.* v. *Chenu,* 188 Cal. 734 [207 Pac. 251]; *Balthazar* v. *Pacific Elec. Ry. Co.,* 187 Cal. 302 [202 Pac. 37, 19 A. L. R. 452]; *Mayrhofer* v. *Board of Education,* 89 Cal. 110 [26 Pac. 646, 23 Am. St. Rep. 451].) Courts will not assume a legislative intention on the part of a city council to interfere with the acts of the general government.

■ Turning to the contentions of the respondent that the regulation of plumbing is a municipal affair, the rule to be applied is not entirely a geographical one. Under certain circumstances, an act relating to property within a city may be of such general concern that local regulation concerning municipal affairs is inapplicable. (*Young* v. *Superior Court*, 216 Cal. 512 [15 Pac. (2d) 163]; *Civic Center Assn.* v. *Railroad Com.*, 175 Cal. 441 [166 Pac. 351]; *Key System Transit Co.* v. *City of Oakland*, 124 Cal. App. 733 [13 Pac. (2d) 979].) For example, where one of the city's streets has been declared by an act of the legislature to be a secondary highway, the improvement of that street is not a municipal affair within the meaning of the Constitution. (*Southern California Roads Co.* v. *McGuire*, 2 Cal. (2d) 115 [39 Pac. (2d) 412].) Also, regulations prescribed by charter or ordinance of a city requiring that the work of altering and improving buildings be subject to local supervision have been held inapplicable to state buildings. (*City of Milwaukee* v. *McGregor*, 140 Wis. 35 [121 N. W. 642, 17 Ann. Cas. 1002].)

In the case of *Kentucky Institution for Education of Blind* v. *City of Louisville*, 123 Ky. 767 [97 S. W. 402, 8 L. R. A. (N. S.) 553], the city attempted to enforce an ordinance relating to fire escapes with respect to a state institution for the blind. The court held the ordinance inapplicable, stating: "The principle is that the state, when creating municipal governments does not cede to them any control of the state's property situated within them, nor over any property which the state has authorized another body or power to control. The municipal government is but an agent of the state, not an independent body. It governs in the limited manner and territory that is expressly or by necessary implication granted to it by the state. It is competent for the state to retain to itself some part of the government even within the municipality, which it will exercise directly, or through the medium of other selected and more suitable instrumentalities. How can the city ever have a superior authority to the state over the latter's own property, or in its control and management? From the nature of things it cannot have."

■ The second point urged by the respondent is that by article XI, section 11, of the Constitution, the city is given

power to "make and enforce within its limits all such local, police, sanitary or other regulations as are not in conflict with general laws". This provision is in addition to section 6 of the same article, adopted in 1914, which makes the ordinances concerning municipal affairs enacted by charter cities paramount to the general laws of the state. (*Civic Center Assn.* v. *Railroad Com.*, 175 Cal. 441 [166 Pac. 351].) But as the challenged ordinance, insofar as it attempts to regulate employees of the state, is not legislation having to do with a municipal affair, it cannot be upheld under the earlier provision of the Constitution if it conflicts with the general law.

Although the legislature has enacted no statute regulating plumbing, if the city's ordinance is a valid exercise of power, then one whom the state has examined and found eligible for employment as a plumber and who has later entered the state civil service may be unable to work on state property because he cannot pass the examination of a city health officer or licensing board. The result is a direct conflict of authority. Either the local regulation is ineffective or the state must bow to the requirement of its governmental subsidiary. Upon fundamental principles, that conflict must be resolved in favor of the state.

It is, therefore, ordered that the petitioner be discharged from custody.

Shenk, J., Houser, J., Curtis, J., and Spence, J., *pro tem.*, concurred.

Rehearing denied.