TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

-----------------------------
                              :
          OPINION             :
                              :
            of                :    No. 87-1101
                              :
   JOHN K. VAN DE KAMP        :    January 28, 1988
     Attorney General         :
                              :
   ANTHONY S. DaVIGO          :
  Deputy Attorney General     :
                              :
-------------------------------------------------------------


        THE HONORABLE RALPH C. DILLS, MEMBER OF THE CALIFORNIA
STATE SENATE, has requested an opinion on the following question:

        May an individual be a member simultaneously of the State
Industrial Welfare Commission and the Personnel Commission of the
Los Angeles County Superintendent of Schools?

                            CONCLUSION

        An individual may be a member simultaneously of the State
Industrial Welfare Commission and the Personnel Commission of the
Los Angeles County Superintendent of Schools.

                            ANALYSIS

        The question presented concerns the common law doctrine
of incompatible public offices as applied to dual membership on the
Personnel Commission of the Los Angeles County Superintendent of
Schools ("commission") and the Industrial Welfare Commission
("I.W.C.").   The doctrine prevents a person from holding
simultaneously two public offices if the performance of the duties
of either office could have an adverse effect on the other.  (68
Ops.Cal.Atty.Gen. 337, 338-339 (1985).)  In 66 Ops.Cal.Atty.Gen.
176, 177 (1983), we summarized as follows:

        "'Offices are incompatible, in the absence of
    statutes suggesting a contrary result, if there is any
    significant clash of duties or loyalties between the
    offices, if the dual office holding would be improper for
    reasons of public policy, or if either officer exercises
    a supervisory, auditory, or removal power over the

other.'  (38 Ops.Cal.Atty.Gen. 113 (1961).)

"(See also, generally, People _ex rel_ Chapman v. Rapsey (1940) 16 Cal.2d 636, 641-642, and e.g. 65 Ops.Cal.Atty.Gen. [606] (1982), Opn. No. 82-901; 64 Ops.Cal.Atty.Gen. 288, 289, (1981); 64 Ops.Cal.Atty.Gen. 137, 138-139 (1981); 63 Ops.Cal.Atty.Gen. 623 (1980); 63 Ops.Cal.Atty.Gen. 607, 608 (1980).)

"The policy set forth in People ex rel Chapman v. Rapsey, _supra_, 16 Cal.2d 636 comprehends prospective as well as present clashes of duties and loyalties.  (See 63 Ops.Cal.Atty.Gen. 623, _supra_.)

"'. . . Neither is it pertinent to say that the conflict in duties may never arise, it is enough that it may, in the regular operation of the statutory plan. . . .'  (3 McQuillin, Municipal Corporations (3d Ed. 1973, 12.67, p. 297).

"'[O]nly one significant clash of duties and loyalties is required to make . . . offices incompatible. . . .'  (37 Ops.Cal.Atty.Gen. 21, 22 (1961).)  Furthermore, '[t]he existence of devices to avoid . . . [conflicts] neither changes the nature of the potential conflicts nor provides assurance that they would be employed.  (38 Ops.Cal.Atty.Gen. 121, 125 (1961).)  Accordingly, the ability to abstain when a conflict arises will not excuse the incompatibility or obviate the effects of the doctrine.  A public officer who enters upon the duties of a second office automatically vacates the first office if the two are incompatible.  (People ex rel. Chapman v. Rapsey,_supra_, 16 Cal.2d 636, 644.)  Both positions, however, must be offices.  If one or both of the positions is a mere employment as opposed to a public office, the doctrine does not apply.  (See 58 Ops.Cal.Atty.Gen. 109, 111 (1975).)'"

For purposes of the doctrine, a public office is (1) a position in government, (2) which is created or authorized by the Constitution or by law, (3) the tenure of which is continuing and permanent, not occasional or temporary, (4) in which the incumbent performs a public function for the public benefit and exercises some of the sovereign powers of the state. ( _Id._ at 342.)  In Schaefer v. Superior Court (1952) 113 Cal.App.2d 428, 432-433, the court clarified the meaning of "sovereign powers of the state" as follows:

"If specific statutory and independent duties are imposed upon an appointee in relation to the exercise of the police powers of the State, if the appointee is

invested with independent power in the disposition of public property or with the power to incur financial obligations upon the part of the county or state, if he is empowered to act in those multitudinous cases involving business or political dealings between individuals and the public, wherein the latter must necessarily act through an official agency, then such functions are a part of the sovereignty of the state."

There is in each county a Superintendent of Schools (Cal. Const., art. IX, § 3) whose duties are prescribed by statute (e.g., Ed. Code,[1] §§ 1240-1271).[2] In order to carry out these duties, the superintendent may employ certificated (§ 1293) and classified (§ 1311) personnel. With respect to such classified employees, the Los Angeles County Superintendent of Schools has, pursuant to section 45224, adopted a merit system procedure in accordance with the provisions of section 45240 et seq. Section 45243 provides for the establishment of a personnel commission. (See generally, 56 Ops.Cal.Atty.Gen. 421 (1973); 48 Ops.Cal.Atty.Gen. 64 (1966).) The statutory scheme prescribes the qualifications for membership on the commission (§ 45244), the manner of appointment (§ 45245), three year staggered terms of office (§ 45247), and the compensation of members (§ 45250).

It is the duty of the commission to prepare an annual budget for its own office (§ 45253), to classify all noncertificated employees and positions within the jurisdiction of the governing board or of the commission, with specified exceptions (§ 45256), to prescribe, amend, and interpret such rules, which shall be binding upon the governing board, as may be necessary to insure the efficiency of the service and the selection and retention of employees upon a basis of merit and fitness, and providing for the procedures to be followed by the governing board as they pertain to the classified service regarding applications, examinations, eligibility, appointments, promotions, demotions, transfers, dismissals, resignations, layoffs, reemployment, vacations, leaves of absence, compensation within classification, job analyses and specifications, performance evaluations, public advertisement of examinations, rejection of unfit applicants without competition, and other necessary matters (§§ 45260, 45261),

---

[1]Unidentified statutory citations are to the Education Code.

[2]Article XI, section 4, provides that "County charters shall provide for . . . (e) [t]he powers and duties of governing bodies and all other county officers . . . ." The County Superintendent of Schools is a county officer. (Gov. Code, § 24000; 52 Ops.Cal.Atty.Gen. 8, 9 (1969).) The Los Angeles County Charter contains no provision respecting the duties of that office inasmuch as the office is constitutionally created. (Cf. ( Nielsen v. Richards (1924) 69 Cal.App. 533.)

to appoint a personnel director and all employees of the commission (§ 45264), and to recommend to the governing board salary schedules for the classified service (§ 45268; and see 54 Ops.Cal.Atty.Gen. 77 (1971)).

The I.W.C. is an agency of the state Department of Industrial Relations, established pursuant to the authority provided under California Constitution, article XIV, section 1. Each of five members, appointed by the Governor with the consent of the Senate, serves a four year term of office. (Lab. Code, §§ 70, 71.) The I.W.C. is authorized to promulgate orders regulating wages, hours, and working conditions of any occupation, trade, or industry in which employees are employed in this state. (Lab. Code, §§ 1173, 1182.) As summarized in Industrial Welfare Com. v. Superior Court (1980) 27 Cal.3d 690, 701-702:

> "From its inception in 1913 to the present, the commission has been vested with broad statutory authority to investigate 'the comfort, health, safety, and welfare' of the California employees under its aegis (§ 1173, enacted Stats. 1913, ch. 324, § 3, p. 633) and to establish (1) '[a] minimum wage . . . which shall not be less than a wage adequate to supply . . . the necessary cost of proper living and to maintain the health and welfare of such [employees],' (2) '[t]he maximum hours of work consistent with the health and welfare of [such employees]' and (3) '[t]he standard conditions of labor demanded by the health and welfare of [such employees] . . .' (§ 1182, enacted Stats. 1913, ch. 324, § 6, pp. 634-635.)

> "Indeed, the 1973 act--while retaining the authorizing language of section 1182 quoted above-- restated the commission's responsibility in even broader terms, directing the commission continually to review and to update its 'rules, regulations and policies to the extent found by the commission to be necessary to provide adequate and reasonable wages, hours, and working conditions appropriate for all employees in the modern society." (Italics added.) (§ 1173, enacted States. 1973, ch. 1007, § 1.5, p. 2002.)"

Such orders are published in the California Administrative Code, title 8, section 11000 et seq. To carry out its duty, I.W.C. or any member thereof may subpena witnesses and administer oaths. (Lab. Code, § 1176.)

While we entertain no doubt that both of the positions in question are public offices, we predicate our conclusion herein exclusively upon the absence of incompatibility between them. The commission is concerned solely with public employees, i.e., the classified employees of the County Superintendent of Schools. As we shall see, I.W.C. is concerned solely with employees in the private sector. Neither agency has any official interest in or jurisdiction over the province of the other.

The statutes creating and defining the powers of the I.W.C. contain no express reference to any public agency or to public employment. The California Supreme Court has recently reviewed the principles of construction which must be followed in determining whether the general terms of a statute are applicable to a public jurisdiction:

"[I]n the absence of express words to the contrary, neither the state nor its subdivisions are included within the general words of a statute. [Citations.] But this rule excludes governmental agencies from the operation of general statutory provisions only if their inclusion would result in an infringement upon sovereign governmental powers. 'Where . . . no impairment of sovereign powers would result, the reason underlying this rule of construction ceases to exist and the Legislature may properly be held to have intended that the statute apply to governmental bodies even though it used general statutory language only.' [Citations.]" (City of Los Angeles v. City of San Fernando (1975) 14 Cal.3d 199, 276-277; accord Regents of University of California v. Superior Court (1976) 17 Cal.3d 533, 536; and see 66 Ops.Cal.Atty.Gen. 217, 218 (1983).)

In 65 Ops.Cal.Atty.Gen. 267, 272-273 (1982), we summarized:

"The crucial distinction in each case is whether the particular legislation affects the fundamental purposes and functions of the governmental body. Immunity is granted if statutorily mandated activities are impaired (see Hall v. City of Taft (1956) 47 Cal.2d 177, 182-183; City of Orange v. Valenti (1974) 37 Cal.App.3d 240, 244), while no exception is provided when the agency's public purposes are unaffected. (See Regents of University of California v. Superior Court, supra, 17 Cal.3d at 537; Flournoy v. State of California (1962) 57 Cal.2d 497, 498-499; State of California v. Marin Mun. Water District (1941) 17 Cal.2d 699, 704-705; City Streets Imp. Co. v. Regents, etc. (1908) 153 Cal. 776, 779; Dropo v. City & County of S.F. (1959) 167 Cal.App.2d 453, 460.)"

In 63 Ops.Cal.Atty.Gen. 24, 27 (1980), we expressed our view concerning the relationship between public employment and governmental purposes:

"It is manifest that the relationship between a public employer and its employees affects the fundamental purposes and functions of the governmental body. (Cf. In re Means (1939) 14 Cal.2d 254, 258; and see unpub. op. of the California Attorney General, dated Dec. 29, 1978, No. IL 78-151.) It has been stated in this regard that governments perform their functions through their officers and employees elected or appointed for that purpose, and that any process of law which would tend to embarrass such officers or employees while in office, and hinder or distract them in the discharge of their duties, would injuriously affect the capacity of the state to perform its functions. (Ruperich v. Baehr (1904) 142 Cal. 190, 193; Balthasar v. Pacific Electric Railway Co., supra, 187 Cal. at p. 308.)

"The rule that governmental agencies are excluded from the operation of general statutory provisions, in the absence of express words to the contrary, only if their inclusion would result in an infringement upon sovereign powers, is long established. (Butterworth v. Boyd (1938) 12 Cal.2d 140, 150; Hoyt v. Board of Civil Service Commissioners, supra, 21 Cal.2d at p. 402.) Nevertheless, we are aware of no cases which have held public agencies bound by a general statute which regulates the employment relationship. On the contrary, we have, on a number of occasions, construed such statutes as not applicable to public jurisdictions, in the absence of any expression of legislative intent to the contrary. (See 1 Ops.Cal.Atty.Gen. 607 (1943) (§ 226, itemized statement of deductions); 5 Ops.Cal.Atty.Gen. 122 (1945) (employment of minors); 9 Ops.Cal.Atty.Gen. 275 (1947) (length of work day).) In Butterworth v. Boyd, supra, it was held that certain provisions of the Insurance Code could not be applied to a city where such application would have impaired the city's power to provide a health service system for municipal employees. In Nutter v. Santa Monica (1946) 74 Cal.App.2d 292, it was held that the state policy regarding labor relations, Labor Code section 923, was not applicable to public employers."

Further, the policy of this state with respect to the classified employees of the County Superintendent of Schools, as shown at the outset, is reflected in an integral, comprehensive regulatory scheme which is, in itself, an indication that the provisions of a general statute were not intended to apply. (Cf. In re Means, supra, 14 Cal.2d at 257; 63 Ops.Cal.Atty.Gen., supra,

28.) In O'Sullivan v. City & County of San Francisco (1956) 145 Cal.App.2d 415, 418, the court similarly observed that

"It is doubtful that the Labor Code applies to employees under a comprehensive municipal civil service system."

The views expressed herein are further supported by the presumption that the interpretations set forth in the Attorney General's opinion last quoted, and related cases, have come to the attention of the Legislature, and if they were contrary to legislative intent that some corrective measure would have been adopted during the course of the intervening period. (California Correctional Officers' Association v. Board of Administration (1978) 76 Cal.App.3d 786, 794; 69 Ops.Cal.Atty.Gen. 191, 196-197 (1986).)

Our determinations herein are also consistent with contemporaneous administrative interpretation. The orders of I.W.C. have never been applied to or enforced against public employees. On the contrary, order number MW-80 presently in effect, expressly exempts public employees. (Tit. 8, Cal. Admin. Code, § 11000, ¶ 2.) It is well settled that where the terms of a statute are ambiguous, the construction of the statute by the officials charged with its administration must be given great weight. (Rivera v. City of Fresno (1971) 6 Cal.3d 132, 140; 62 Ops.Cal.Atty.Gen. 494, 500 (1979).)

Finally, it is noted that provisions of the Labor Code extending to public employment do so expressly. (E.g., former § 1413, subd. (d), see now Gov. Code, § 12926, subd. (c) -- Fair Employment Practices; § 3300 -- Workers' Compensation; § 6300 -- Occupational Safety and Health.) When the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded. (Ford Motor Co. v. County of Tulare (1983) 145 Cal.App.3d 688, 691.)

Inasmuch as the respective domains of the I.W.C. and of the commission are mutually exclusive, it is concluded that an individual may be a member simultaneously of both.

* * * * *