[S. F. No. 5988. In Bank.—July 26, 1912.]

## CITY AND COUNTY OF SAN FRANCISCO, Petitioner, v. EDWARD HYATT, Superintendent of Public Instruction of the State of California, Respondent.

PUBLIC SCHOOLS—MINIMUM SCHOOL DAY—STATE BOARD OF EDUCATION MAY ESTABLISH—APPORTIONMENT OF SCHOOL FUNDS.—In the absence of any law defining what shall constitute a minimum school day, or power elsewhere conferred to define it, the state board of education, under the general power conferred upon it by section 1521 of the Political Code "to adopt rules and regulations not inconsistent with the laws of this state . . . for the government of the public schools," has authority to enact a rule providing a minimum of four hours as the attendance necessary in the elementary schools of the state to constitute a school day's work for any purpose, and to make the same applicable in the matter of the apportionment of the state school funds to the different school districts, under the provisions of subdivision 4 of section 1532 of the Political Code, and section 1858 of the same code, as amended in 1911 (Stats. 1911, p. 527).

ID.—LOCAL BOARDS CANNOT ESTABLISH MINIMUM SCHOOL DAY AS INCIDENT TO POWER TO PRESCRIBE COURSE OF STUDY—SECTION 1858 OF POLITICAL CODE CONSTRUED.—The power to determine the length of time to constitute a minimum school day for the purpose of apportioning the school funds has not been confided to the local boards of education as an incident of the power conferred upon them by various provisions of the Political Code to determine the course of study. Subdivision 5 of section 1858 of the Political Code, as amended in 1911, does not imply the existence of any such right, nor does it define of itself what shall constitute such minimum school day. .

ID.—RULE ESTABLISHING MINIMUM SCHOOL DAY APPLICABLE TO NIGHT AS WELL AS DAY SCHOOLS.—The rule of the state board of education establishing a minimum school day, is applicable, in the matter of the apportionment of the school funds, to night schools as well as to day schools, notwithstanding the length of time during which the former are conducted does not generally exceed two hours a day.

APPLICATION for a Writ of Mandate directed to the Superintendent of Public Instruction of the State of California.

The facts are stated in the opinion of the court.

Percy V. Long, City Attorney, and J. F. English, Assistant City Attorney, for Petitioner.

J. D. Fredericks, District Attorney for Los Angeles County, and Byron C. Hanna, Chief Deputy, *Amici Curiae,* for Petitioner.

U. S. Webb, Attorney-general, and John H. Riordan, for Respondent.

LORIGAN, J.—This is a petition for a writ of mandate and involves particularly the validity of a rule of the state board of education providing a minimum of four hours as the attendance necessary in the elementary schools of this state to constitute a school day's work in the matter of the apportionment of the state school funds to the different school districts.

Preliminary to quoting the rule adopted by the board and as bearing on the question of its validity, certain sections of the Political Code must be referred to.

Section 1532 of that code, subdivision 4 thereof, requires the state superintendent "to apportion the state school fund" and "in apportioning said fund he shall apportion to every county and to every city and county two hundred fifty dollars for every teacher determined and assigned to it on school census by the county or city and county school superintendent for the next preceding school year, as required of the county or city and county school superintendent by the provisions of section 1858 of this code, and after thus apportioning two hundred and fifty dollars on teacher or census basis, he shall apportion the balance of the state school fund to the several counties or cities and counties according to their average daily attendance as shown by the reports of the county or city and county school superintendents for the next preceding school year."

This section 1858, referred to in said section 1532, as it stood prior to the session of the legislature of 1911, read as follows:—

"The school superintendent of every county and city and county must apportion all state and county school moneys for the primary and grammar grades of his county or city and county as follows:

"1. He must ascertain the number of teachers each school district is entitled to by calculating one teacher for every district having seventy or a less number of census children and one additional teacher for each additional seventy census children, or fraction of seventy not less than twenty census children, as shown by the next preceding school census." Provision is further made that any moneys remaining after the apportionment on the census basis, should be apportioned to the several districts in proportion to the average daily attendance for the preceding school year.

This section was amended in 1911 (Stats. 1911, p. 527), and as now in effect reads, as to the apportionment of all state and county school moneys by the school superintendent of every county and city and county for the elementary grades therein as follows:

"1. He must ascertain the number of teachers each school district is entitled to by calculating one teacher for every district having thirty-five or a less number of units of average daily attendance and one additional teacher for each additional thirty-five units of average daily attendance, or fraction of thirty-five not less than ten units of average daily attendance as shown by the annual school report of the school district for the next preceding school year; and two additional teachers shall be allowed to each district for every seven hundred units of average daily attendance, etc."

At the same session a new subdivision was added to this section as follows:

"5. Units of average daily attendance wherever used in this section shall be construed to be the quotient arising from dividing the total number of days of pupils' attendance in the schools of the district by the number of days school was actually taught in the district. A school day is hereby construed and declared to be that portion of the calendar day or night in which school is maintained and in which one-twentieth of the work of a school month may be performed. The attendance of pupils present less than one-fourth of any day shall not be counted for that school day and pupils present for one-fourth of a day or for more than one-fourth of a day shall be counted as present for one-fourth of a day, one-half of a day, three-fourths of a day, or for a whole day, as the case may be."

Subsequent to the taking effect of these amendments to section 1858 the state board of education adopted the following rule, the validity of which is the main point in controversy:

"The School Day: Computing Average Daily Attendance. ·

"The minimum school day for any school sharing in state funds on a basis of average daily attendance shall consist of not less than four hours of actual work and attendance exclusive of recesses.  Each school day shall be divided into four approximately equal parts.  One-fourth of a day's attendance shall consist of actual work and attendance for not less than one hour, exclusive of recesses; one-half of a day's attendance shall consist of actual work and attendance for not less than two hours exclusive of recesses; three-fourths of a day's attendance shall consist of actual work and attendance for not less than three hours, exclusive of recesses.  In no event shall attendance by any individual on one calendar day be construed as more than one day's attendance.  The word hour as used in this rule means a sixty minute hour.  This rule shall govern the computation of average daily attendance in day and evening elementary and high schools, polytechnic, industrial, agricultural, and all other schools drawing state money on a basis of average daily attendance."

The powers of the state board of education as far as involved here are enumerated in section 1521 of the Political Code:

"The powers and duties of the state board of education are as follows:

"1. To adopt rules and regulations not inconsistent with the laws of this state for its own government and for the government of the public schools and district school libraries. . . ."

The substantial allegations of this petition for a writ of mandate are that under the law, respondent state superintendent is required to give, and has always heretofore given, in computing the average daily attendance in elementary schools consisting of day and night schools, for the purpose of determining the annual apportionment of state school funds thereto, credit to the elementary night schools on an equal basis with the elementary day schools, making no discrimination between them; that he has calculated a night session of such night schools as being equivalent of a day session for

that purpose; that said respondent threatens and intends to now follow said rule of the state board of education fixing a minimum school day in making an apportionment of state funds to the elementary day and evening (night) schools; that by said rule the minimum for a school day is fixed at not less than four hours daily work and attendance; that the average attendance in evening elementary schools of the city and county of San Francisco and elsewhere in the state is, and necessarily will continue to be an average period of two hours each night, while the average daily attendance in day elementary schools in said city and county and throughout the state is, and will continue to be, a period of from four to five hours; that under the rule adopted credit will only be given by said respondent for elementary work done in night schools in the various school districts upon the basis of one-half or less of the credit given to day elementary schools in said districts and that the application of such rule to the apportionment would cut down the appropriation which the elementary schools of the city and county of San Francisco claim they are entitled, to the extent of $16,759.

The claim of petitioner is that the state board of education had no authority to adopt the rule in question because under certain sections of the Political Code to be referred to, taken in connection with subdivision 5 of section 1858, it is asserted that the power to determine the length of time to constitute a minimum school day for the purpose of apportioning the school funds has been left exclusively to the local boards of education.

As a special basis in support of this position certain sections of the Political Code other than we have mentioned are relied on by petitioner. Section 1697 thereof declares that "a school month is construed and taken to be twenty days, or four weeks of five days each, including legal holidays." Section 1663, subdivision 2, provides that "The county or city and county board of education must, except in incorporated cities having boards of education, on or before the first day of July of each year, prescribe the course of study in and for each grade of the day and evening elementary schools for the ensuing school year," and provisions of the city charter of the city of San Francisco are to the same effect. Section 1771 confers power on county boards of education "to prescribe and

enforce in the public schools a course of study," and section 1543 requires the county superintendent of schools of each county "to enforce the course of study."

Section 1673 provides as to the duration of school sessions that "no school must be continued in session more than six hours a day . . ."

Under these sections it is insisted by petitioner that while the legislature has fixed the maximum school day (by sec. 1673 just quoted) to be six hours, it has never established any minimum school day, but has left that to the local boards as incident to their right to determine the course of study; that authority to establish the course of study necessarily confers power on them to prescribe also the hours of study thereof—in effect to fix the minimum school day; hence, when any local school board has determined what shall constitute a month's school work in said courses and has fixed the length of daily or nightly session in which one-twentieth of the school month work may be performed, such session, under subdivision 5 of section 1858, shall, for the purpose of apportioning school funds, be considered a school day's work, no matter what the hours less than the maximum may be which the local board has fixed; and that this authority cannot be interfered with by the state board of education under a rule making an average of four hours' daily attendance a minimum school day, with the result that in apportioning funds to the school districts the school work in the night schools, which necessarily cannot exceed two hours, shall only be credited with one-half the amount which is allowed for a day's work in a day school.

As against this claim, the position of respondent is that the authority to fix a course of study given the local boards of education confers no exclusive power upon them to prescribe whatever hours they see fit less than the maximum as constituting a minimum school day, and that subdivision 5 does not imply the existence of any such right, nor does it define of itself what shall constitute such school day. Hence, it is claimed that as the local boards have not the authority asserted and the legislature has not specified in subdivision 5 of section 1858 what shall constitute a minimum school day since it only defines a school day generally, it was the intention of the legislature to leave the matter of fixing the length of the minimum school day session to the state board of educa-

tion, particularly as it had theretofore declared what should constitute the maximum school day.

We are of the opinion from a consideration of the various sections referred to, particularly the later amendment of section 1858 which reflects the obvious intention of the legislature, that the position of the respondent is correct.

It is apparent, we think, under the general power conferred on the state board of education "to adopt rules and regulations not inconsistent with the laws of this state . . . for the government of public schools" that it has the authority to define what shall constitute a minimum school day for any purpose, even for the apportionment of school funds, in the absence of any law defining it, or power elsewhere conferred to do so. The conference of this general power upon the state board of education is in harmony with the constitutional provision (art. IX) requiring the adoption of one system of common schools which shall be applicable to all the common schools of the state, and the term "system" itself imports a unity of purpose, as well as an entirety of operation. (*Kennedy* v. *Miller*, 97 Cal. 429, [32 Pac. 558].) Aside from general legislation designed to secure this entirety of operation and with a view to promote it, power to do so is expressly conferred on the state board, and unless there is some law which otherwise governs, it would appear that as this rule fixing the minimum school day operates in the apportionment of the state school funds equally and uniformly throughout the state without discrimination, it is within the power of the state board to prescribe it.

If the rule adopted by it, in question here, is unauthorized, it can be so only because, as contended by petitioner, the various sections of the code upon which it relies, taken in connection with subdivision 5 of section 1858, confer exclusive power upon the local school boards of education to regulate the length of the school day for all purposes, and the existence of this power precludes the state board from attempting to exercise any authority upon the subject of the regulation for the apportionment of school funds. But certainly no section of the code referred to by petitioner confers any such power on the local boards, or places any such limitation on the authority of the state board, nor impliedly requires any such construction.

Particular reliance is placed on those sections of the Political Code cited, which require the local boards to prescribe "the course of study" for each grade in the schools, and the argument is that the power to prescribe the course of study necessarily confers the power to determine the hours of daily or nightly session for the study thereof—therefore authority to determine the minimum school day. It is quite clear, however, what is meant by the "course of study" which these local boards shall prescribe through reference to section 1665 of the same code, in which the various branches to be taught in the public schools and which shall constitute the course of study therein, are specifically enumerated. The requirement that the local boards shall prescribe a course of study is a mandate that they shall establish a course which shall embrace the enumerated branches. While in doing so some measure of discretion is given to the local boards as to the extent of the course and authority also given them to amend or change it whenever they deem it necessary (Pol. Code, sec. 1666), this discretion is still to a degree controlled by the state board of education, as it is given the right and made its duty (Pol. Code, sec. 1874) to select the line of text books in these enumerated branches which must be used by the local boards in prescribing the course of study in the schools and the use of which the state board must enforce. In the section relied on, no power is expressly given to do anything else than to prescribe this course; nothing conferring on them the exclusive authority to fix the time or hours per day when any one of the prescribed branches shall be studied, or the length of the school day which shall be devoted to their study as a course. It may be conceded that from the duty enjoined on the local boards to prescribe a course of study, it must logically follow that the local boards are authorized to determine the daily session for the study of such course, but still it does not legally follow that this amounts to an exclusive right to determine that this session shall constitute a minimum school day for all purposes under the school laws, or even confer exclusive right to determine what shall constitute a minimum school day for the study of the course in the schools where required. There is nothing inconsistent in requiring the local boards to prescribe a course of study and, on the other hand, empowering the state board of educa-

tion to determine what shall constitute a minimum school day for its study. The legislature in the first instance, in requiring the local boards to prescribe such a course, and using the same language now found in the sections, might have in addition declared what should constitute a minimum day for the study thereof. It would be the duty of the local boards thereunder to prescribe a course, the study of which should engage the minimum school day as so fixed. Only the same result would follow under the power conferred on the state board to do so and the exercise of it.

It may not be questioned but that, in the absence of any statute or rule of the state board on the subject, the local board could exercise the right to regulate the school day sessions in their respective cities or counties. This power exists, however, not by virtue of their right to prescribe a course of study, but under section 1617 of the Political Code, which gives them the same authority over the schools in their district that is conferred on the state board over the public school throughout the state—namely, "to prescribe and enforce rules . . . for the government of schools" within their districts. But the exercise of this power is subject to the control of the state board on that subject, because in this same section it is declared that such rules must be "not inconsistent with law or those prescribed by the state board of education." It is apparent from this section that, except as to those matters where express power is conferred on the local board to act exclusively, it was the intention of the legislature to make their action, relative to public school matters, secondary and subsidiary to the control of the state board. Under the section last referred to, the local boards might fix the session of the schools in their district and hence determine what should constitute a minimum school day therefor, but the power in that respect was subsidiary to that of the state board and subject to control and regulation by it at any time that it deemed it proper to act in the matter, and the regulation of the state board would abrogate any rule which might have been adopted by the local boards for a minimum school day, if in conflict with that prescribed by said board.

It is of no moment in considering the power of the state board that it had not deemed it necessary heretofore to exer-

cise control over the local school boards in the matter of school sessions or to fix a minimum day therefor. It simply indicates that the public school system throughout the state, in the matter of daily sessions of schools as heretofore prevailing, was so established by the local boards as to render any rule of the state board on the subject unnecessary. In fact, as to such a session the state board has not undertaken now to interfere with its regulation by the local school authorities, but simply to define a minimum school day for the purpose of apportioning the school money under the new system of apportionment. Under the old system the apportionment was made on the basis of the number of census children in the school district, whether they actually attended the schools thereof or not, and the remaining money was apportioned on the basis of the average daily attendance, regardless of how long the pupils remained at the school session or how long a session of school was prescribed. The school day under that system was of no importance except to ascertain the average daily attendance for the purpose of distributing the surplus money after the apportionment on the census basis, and the length of the school session was of no importance for any purpose.

Under the new system provided for by the amendment to section 1858, making the "unit of average daily attendance" the exact basis of apportionment, the minimum school day became an important factor in calculating the apportionment, and, on the assumption that no such day had been fixed by the legislature, or power vested elsewhere to determine it, the state board undertook to fix it. Having the general power to regulate for the public schools throughout the state, it could pass any rule or regulation for that purpose which it deemed necessary, unless constrained by some statutory provision. It cannot be said that the fixing of a minimum school day for the purpose of apportioning state school funds is not a proper part of the government of the public school system. Nor do we understand petitioner to claim that the powers conferred upon the state board are not comprehensive enough to embrace authority to fix a minimum school day for all purposes, including the apportionment of the school funds, in the absence of any legislation on the subject. The claim only is that the power has been exclusively conferred on the local

boards, and the daily school session as fixed by them is recognized in subdivision 5 as a minimum school day for the purpose of apportioning the state school fund. This claim of exclusive power vested in the local boards, for the reasons given above, we deem untenable, and unless there is some merit in the claim of petitioner under subdivision 5, we are satisfied that the state board, in the exercise of its paramount authority respecting the public schools of the state, had the right to adopt the rule in question declaring what should constitute a minimum school day.

As to subdivision 5 of section 1858: The purpose of adding this subdivision to the section will be readily observed. While this amended section made the "unit of average daily attendance" the basis of apportionment for the state funds, it did not define what was meant thereby, and subdivision 5 was added for that purpose. In so defining it, it is stated therein that "a school day is hereby construed and declared to be that portion of the calendar days or nights in which one-twentieth of the work of the school month may be performed." Petitioner contends that thereby the minimum school day was fixed; that the declared intention of the legislature was to make the unit quantity of daily work as fixed by the local boards govern as to such day for the purpose of apportionment. But if this was its intention, certainly the language used does not clearly or definitely express it, or really express it at all. All that is declared is that a school day is that portion "in which one-twentieth of the work of the school month may be performed" and after the definition has been read the inquiry still presents itself, what is the minimum school day? There is nothing clear or determinative on the subject in the language used. The most that can be said for it is that it defines a school day generally. When the legislature had occasion to define a maximum school day, it defined it plainly and on a basis of hours, and if it had intended to itself define a minimum school day in this subdivision 5, we would naturally expect to find it defined on a similar basis of time. If it was intended to depart from this standard previously employed and provide for some other, we would look to find some clear expression of that intention. In other words, if it was intended that the quantity of a school day's work, as it might be variously fixed by the different local

boards throughout the state, should constitute a minimum school day, we would expect to find something definite to that effect. But we find in the subdivision nothing of the kind. It contains no expression of intention to define the minimum school day on the basis of quantity of daily work as fixed by the local school boards, or on such a basis at all; nor on the other hand does the language contain the slightest suggestion that time or hours of daily session be made the basis. It simply does not define the minimum school day at all, nor declare any standard—whether the unit quantity of work or the unit of time—whereby it shall be fixed. If it had intended to define a minimum day itself, or to declare that the unit quantity of daily work, as the local school boards throughout the state might variously determine the period for its daily performance, should constitute a minimum school day, or that the time or hours as the unit of the basis should not be employed for that purpose, it was a very easy thing for the legislature to have plainly said so. An entire absence of any statutory declaration, or the presence of any language from which it can be reasonably inferred, strongly implies that it did not intend to declare anything on the subject of a minimum school day, or provide any standard under which it should be determined, but to leave the whole matter to that body which in the absence of any direct legislation on the subject, was empowered to deal with it—namely, the state school board. It doubtless concluded that the board charged with the duty of regulating the public schools would be in a much better position than itself to regulate that subject. It was not necessary for the legislature to provide all the details in its legislation on the new system of apportionment. Having legislated on that subject as far as it deemed reasonably practical, it could leave the matter of the length of daily sessions of the schools—or the fixing of the minimum day— to the discretion of the state board.

That its purpose was to do so we think is quite apparent when we consider the intention of the legislature in establishing the new system of apportionment of the state funds. Under the old method, the apportionment thereof was based on the number of census children in the district, whether they attended the schools or not, and the surplus distributed on the basis of average daily attendance, independent of any

consideration of the time the pupils spent in school. Under this system, in the more populous districts of the state, where census children attended private schools and did not attend the public schools, these children were, however, enumerated and entered into the basis upon which such districts, to that extent, unnecessarily participated in the state school fund, to the disadvantage of less populous districts and where the schools were better attended, while under the same system distribution of the surplus fund was made on a basis of average daily attendance, irrespective of the length of time the children spent at the daily sessions or how long those sessions lasted. Under the new system the basis of apportionment is radically changed and but one basis provided for—namely, the unit of average daily attendance. The general intention of the legislature was to establish a more definite and exact and apparently a more fair and equitable method or basis of apportionment than previously obtained; to apportion the funds to the schools in proportion as the necessary cost and expense of their maintenance as represented by the unit of average daily attendance. While providing generally a basis to attain that end, no standard by which the unit of attendance should be measured was fixed by the legislature. As we have said, it was not necessary that it should legislate as to the details, for a board existed, empowered to further the intent by its separate action, and in making the rule in question the state board did so by establishing a minimum school day based upon time as the unit under which the apportionment should be made. There can be no question but that this standard was a proper and definite one. It is that which is generally employed in educational matters where, as pointed out by respondent, high school pupils are credited to the state university and that university itself credits its students upon "units," signifying so many hours of work in the classroom during the term. This is a proper, adequate, and definite standard, capable of being sustained on various considerations, if it were necessary here to do so. In fact, the complaint is not that it is not a definite or proper standard, but that it is too definite as applied to the night schools. But definiteness and exactness as to all schools was the very matter which the legislature contemplated; to remove under the new system the laxity which prevailed under the old, by

precluding particular schools throughout the school districts or classes of schools therein which are maintained either daily or nightly for but one or two hours, or even a less period of session, from receiving the same apportionment as those conducted for longer hours or for the maximum time. While it is true that under the constitution the day and night elementary schools are placed on an absolute equality, this, as far as the apportionment of school funds for their maintenance is concerned, only means that no discrimination should be made between them. This rule of the state board makes none. It operates equally and uniformly upon all schools upon the basis of average daily attendance calculated under the established minimum school day. On the theory of petitioner, as the day schools are conducted for at least four hours and night schools, admittedly, for not exceeding two, the former, in order to get the same apportionment as the latter, would be compelled to maintain a session of twice the length. This would create a decided lack of uniformity and constitute a discrimination in favor of the night as against the day schools which it was designed by the legislature under the new system of apportionment to prevent, and which is effectually prevented under the rule of the state board.

The beneficence of night schools is unquestioned, but it is to be noted that they exist almost entirely in the large cities; are for the benefit particularly of the residents thereof, and, in the nature of things, as their sessions do not exceed two hours, the expense of their maintenance cannot equal that of the day schools having sessions of twice that length. Under section 1861 of the Political Code, ''the state school fund must be used for no other purpose than the payment of the salaries of teachers of primary and grammar schools,'' being the day and evening elementary schools. The principal element in the expense of the maintenance of schools is the salary of teachers, to pay which the state fund must be devoted, and this expense is based on the duration of their employment. Necessarily, this cannot be the same as between teachers employed in the night and day schools, and, in the ordinary course of things, the teacher employed but one-half the time that another is employed receives but one-half the compensation.

Under these circumstances we would hardly expect to find the legislature in subdivision 5 declaring, either expressly or impliedly, that the unit quantity of school work prescribed to be daily or nightly performed by the local school board, no matter how limited its sessions for the performance thereof might be, should constitute a minimum school day for the purpose of equal apportionment of the school funds, with schools holding longer sessions or impliedly declaring against the fixing of the minimum school day on the time or hour basis.

It is of no moment, on the question of the authority of the state board to fix such school day for purposes of apportionment, to consider how the rule adopted has affected the efficient maintenance of the night schools. No such question is involved. It is simply one of power and authority of the board to make the regulation, and in the absence of any express legislation on the subject or authority vested in the local boards to determine it, we are satisfied that the state board had this authority and that the rule in question is valid.

The application for the writ is denied.

Shaw, J., Angellotti, J., Sloss, J., Melvin, J., and Henshaw, J., concurred.

Rehearing denied.