SAN FRANCISCO NAACP et al., Plaintiffs,

v.

SAN FRANCISCO UNIFIED SCHOOL DISTRICT et al., Defendants.

No. C–78–1445 WHO.

United States District Court, N. D. California.

Sept. 18, 1979.

Thomas I. Atkins, Atkins & Brown, Boston, Mass., Eve Paterson, San Francisco, Cal., Nancy B. Reardan, Sacramento, Cal., James L. Hunt, Susan A. Ogdie, Lee A. Thompson, McCutchen, Doyle, Brown & Enersen, Annette Green, Law Department, Oliver A. Jones, Peter Cohn, San Francisco, Cal., Nathaniel R. Jones, Gen. Counsel, NAACP, Special Contribution Fund, New York City, for plaintiffs.

Aubrey V. McCutcheon, Jr., P. C., Detroit, Mich., H. LeRoy Cannon, Legal Advisor, Sue C. Hestor, Staff Counsel, San Francisco Unified School District, San Francisco, Cal., for defendants S. F. Unified School District, Board of Education of SFUSD, and Dr. Robert F. Alioto.

Evelle J. Younger, Atty. Gen., Asher Rubin, Deputy Atty. Gen., San Francisco, Cal., for State defendants.

### OPINION AND ORDER

ORRICK, District Judge.

This school desegregation case, brought by the San Francisco NAACP, a civil rights organization, on behalf of its members, by black parents on behalf of their children, and each on behalf of all those persons similarly situated against the San Francisco Unified School District (the "District") and other defendants, including the State Board of Education and its members, the State Superintendent of Public Instruction, and the State Department of Education (the "State Defendants"), seeks to eradicate allegedly discriminatory and segregative practices currently alleged to exist in San Francisco's public schools. The State Defendants have moved the Court under Fed-

eral Rule of Civil Procedure 12(b) for an order dismissing them from the action on the ground that they are not proper parties, or, alternatively, for an order abstaining from exercising jurisdiction over them. This Court is of the opinion that it would be improper for it to abstain, and refuses to hold, certainly at this stage in the litigation, that the State Defendants cannot be held liable for the alleged presence of segregation and racial discrimination in San Francisco's public schools. Thus, for the reasons hereinafter stated, the Court *denies* the motion of the State Defendants.

Against the allegations appearing in the complaint, summarized below, the Court will examine and consider the merits of the State Defendants' principal contentions that the primary responsibility for education lies with local school districts rather than with the state, and that even assuming the state has a duty to help abolish discriminatory practices in local districts, such duty lies with the Legislature, which has plenary power over education, rather than with the state administrative agencies, whose authority is subordinate to and circumscribed by the Legislature. Concurrently the Court will consider the plaintiffs' contention that state and federal laws place an active duty upon California state officials and agencies, which exercise pervasive control over the supervision and management of the State's schools, to help eradicate discrimination and segregation.

### I.

This case is related to an earlier action, *Johnson v. San Francisco Unified School District*,[1] charging public school officials with creating, maintaining, and operating a dual school system. In that action, the district court found that defendants had engaged in *de jure* segregation. It thereupon ordered them to implement a desegregation plan, permanently enjoined them from engaging in further acts of racial discrimi-

nation or segregation, and ordered them to submit annual compliance reports. On June 22, 1978, the Court *sua sponte* dismissed the complaint without prejudice, for mootness and failure to prosecute. The present action was filed shortly thereafter.

Jurisdiction of this action is invoked under the First, Ninth, Thirteenth, and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. §§ 1981 and 1983, the 1964 Civil Rights Act, and 28 U.S.C. §§ 1331, 2201, and 2202. Pendent jurisdiction is also invoked to enforce plaintiffs' rights under the Constitution and pertinent laws of the State of California.[2]

The State Defendants are alleged to have defaulted in their legal responsibilities by, *inter alia,* taking the following actions which they knew would have a racially segregative effect: approving the construction of and additions to certain schools; approving the use of certain rented, leased, or portable classrooms; permitting the establishment or reestablishment of certain school attendance boundaries, grade structures, and/or feeder patterns; permitting the adoption of certain policies and the implementation of certain practices with respect to hiring, assignment, and promotion of faculty, staff, and administrators; approving or permitting the operation of certain student transfer programs, testing procedures and uses, and student discipline procedures; deliberately and willfully disregarding requirements of state and federal laws and/or regulations prohibiting the operation of racially segregated schools; approving or permitting certain uses of transportation equipment and programs, and of federal funds; and wrongfully certifying certain San Francisco schools as meeting minimum state standards.

### II.

■ At the outset, the Court must decide whether it is appropriate for it to abstain from acting at all in this matter. The

1. 339 F.Supp. 1315 (N.D.Cal.1971), *vacated and remanded,* 500 F.2d 349 (9th Cir. 1974) (district court's mandated desegregation plan to remain in effect until final resolution of the litigation).

2. Although the complaint does not specify the precise state laws under which this action is brought, the Court has determined from other pleadings what those laws are likely to be.

doctrine of abstention is a narrow one, to be applied only in "exceptional circumstances," namely in three general categories:

"(a) * * * 'cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law' * * *.

(b) * * * where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar. * * *

(c) * * * where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, * * *; state nuisance proceedings antecedent to a criminal prosecution, * * *; or collection of state taxes. * * *." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814–16, 96 S.Ct. 1236, 1244–1246, 47 L.Ed.2d 483 (1976).

None of these narrow grounds justifies abstention in this case.

▆▆▆ The State Defendants, citing *Louisiana Power & Light Co. v. Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), advocate abstention principally on the second ground, that state law concerning the relationship between local and state authorities is unclear.[3] Specifically, they contend that this Court's decision on the issue of state responsibility for local segregative practices, which will involve important and sensitive questions of state policy, could conflict with future rulings of state courts, which have not yet had the opportunity to pass upon the specific question before this Court. This Court declines to abstain on that ground, however, principally because

relevant California law is sufficiently clear to leave little question as to its proper application. As explained more fully below, California courts have held on numerous occasions that education is a statewide, rather than a local matter. Moreover, in a recent opinion, *Tinsley v. Palo Alto Unified School District,* 91 Cal.App.3d 871, 154 Cal. Rptr. 591 (1979), *cert. denied,* June 7, 1979, a California appellate court, albeit in *dicta,* addressed the precise issue now before this Court. The fact that there are other cases now pending before California courts, with which this Court might conflict, is insufficient in itself to warrant abstention.[4] *Colorado River Water Conservation District v. United States, supra,* 424 U.S. at 817–18, 96 S.Ct. at 1246–47. Nor does the mere existence of a relevant, though as yet uninterpreted, regulatory scheme, such as 5 Cal. Administrative Code, Chapter 7 (§§ 90–101) (1978), provide sufficient ground for this Court to abstain. The State Defendants have not shown that the regulations themselves raise federal constitutional questions, *Baggett v. Bullitt,* 377 U.S. 360, 376–77, 84 S.Ct. 1316, 1325–26, 12 L.Ed.2d 377 (1964), or that exercise of federal review would be disruptive of state efforts to establish a coherent policy with respect to state responsibility for school desegregation. *Colorado River Water Conservation District v. United States, supra,* 424 U.S. at 814, 96 S.Ct. at 1244.

For the above reasons, this Court declines to abstain, and instead will proceed to decide the issue before it.

### III.

We thus turn to an analysis of state and federal laws to determine whether responsibility for eradicating alleged segregative and discriminatory practices in public schools is solely the responsibility of the

---

**3.** Their additional reason for abstention, that plaintiffs can obtain complete relief without the presence of the State Defendants, is neither a legitimate ground for abstention nor correct as matter of common sense.

**4.** The Court is not presented with a situation in which the pending state litigation involves the

same parties as are in the federal case, as in *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979), or would fully decide the rights of the parties now in federal court. *See Colorado River Water Conservation District v. United States,* 424 U.S. 800, 818, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).

local school boards and districts, or whether it is shared by state agencies. In so doing, we begin by examining applicable provisions of the California Constitution and the principal interpretive cases. Next, we review applicable provisions of the California Education Code. Finally, we look at federal cases which have held that state entities can be held liable for the presence of discrimination and segregation in public schools.

## A. *State Law*

■ In deciding issues of state law, it is the duty of the district court to examine all relevant sources of law, including statutes, regulations, decisions of all of the courts of the state and, if necessary, of the State Attorney General, and to ascertain therefrom how the Supreme Court of the state would presently rule if confronted by the issue before the Court. 1A J. Moore, Federal Practice ¶¶ 0.307–0.309 (2d ed. 1979).

In California, education is regulated by both constitutional and statutory provisions. To a significant degree, the California Constitution imposes direct duties upon the State. Article IX is devoted to Education. Beginning with a general statement of policy, the Constitution proclaims that "[a] general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the Legislature shall encourage by all suitable means the promotion of intellectual, scientific, moral, and agricultural improvement." Section 1. A catalogue of specific duties follows: the Legislature is ordered to provide for "a system of common schools by which a free school shall be kept up and supported by each district * * *" (Section 5); requirements for teachers' salaries, the "Public School System," apportionment of state aid, retirement systems, and district taxes are described (Section 6); the State Board of Education is mandated to adopt textbooks (Section 7.5); the Legislature is given power "to provide for the incorporation and organization of school dis-

tricts * * * [and to] authorize the governing boards of all school districts to initiate and carry on any programs, activities, or to otherwise act in any matter which is not in conflict with the laws and purposes for which school districts are established" (Section 14).[5]

■ Leaving aside for the moment statutes and regulations, which more specifically delineate state supervision of education, a perusal of the foregoing constitutional provisions and the cases interpreting them leaves no doubt that, as has been repeatedly held by California courts, the management of public schools in California is a matter of statewide supervision rather than a local concern. *Cloverdale Union High School District v. Peters,* 88 Cal.App. 731, 738, 264 P. 273, 277 (1928); *Atherton v. Superior Court,* 159 Cal.App.2d 417, 324 P.2d 328 (1958); *Piper v. Big Pine School District,* 193 Cal. 664, 669, 226 P. 926, 928 (1924); *Chico Unified School District v. Butte County,* 3 Cal.App.3d 852, 855, 84 Cal.Rptr. 198, 200 (1970); *San Francisco Unified School District v. Johnson,* 3 Cal.3d 937, 951, 92 Cal.Rptr. 309, 317, 479 P.2d 669 (1971); *Hall v. City of Taft,* 47 Cal.2d 177, 179, 302 P.2d 574, 576 (1956); *Tinsley v. Palo Alto Unified School District, supra,* 91 Cal.App.3d at 903, 154 Cal.Rptr. at 612. *See also,* 61 Op.Atty.Gen. 400 (1978). Moreover, the Legislature has plenary authority over the education of California's youth. *Mountain View High School District v. City Council,* 168 Cal.App.2d 89, 97, 335 P.2d 957, 963 (1959); *Worthington School District v. Eureka School District,* 173 Cal. 154, 159 P. 437 (1916); *Atherton v. Superior Court, supra; San Francisco v. Hyatt,* 163 Cal. 346, 125 P. 751 (1912); *Hall v. City of Taft, supra,* 47 Cal.2d at 179–80, 302 P.2d at 576–77. Thus, although the state can assign certain duties with respect to the local operation of schools to local agencies, it cannot by such incidental delegations abdicate its role as the entity ultimately responsible for the proper and lawful functioning of the state's schools.

5. Plaintiffs also intend to rely upon Article 1, Section 7 of the California Constitution, governing due process and equal protection.

Language from two decisions, one recent, and one quite old, serves to illustrate the strength of this proposition as a fundamental tenet of California law. In *Hall v. City of Taft, supra,* a case frequently cited in this regard, the California Supreme Court held that a municipal corporation's building regulations are not applicable to the construction of a public school building by a school district in the municipality. The Court analyzed the extensive state regulation of public schools, stating:

"The public school system is of statewide supervision and concern and legislative enactments thereon control over attempted regulation by local government units. * * * 'It [the education of the children of the state] is in a sense *exclusively the function of the state which cannot be delegated to any other agency.* * * * [It] is an obligation which the state took over to itself by the adoption of the Constitution. To accomplish the purposes therein expressed the people must keep under their exclusive control, through their representatives, the education of those whom it permits to take part in directing the affairs of state.' *School districts are agencies of the state for the local operation of the state school system." Id.* at 181, 302 P.2d at 577 (emphasis added).

More recently, and more directly relevant to the case at bar, the Court of Appeal for the First Appellate District, in *Tinsley v. Palo Alto Unified School District, supra,* took a more activist approach to the responsibility of the state, stating that "[I]t is clear that in California * * * the *responsibility for furnishing constitutionally equal educational opportunities to the youth of the state is with the state, not solely in the local entities it has created.* * * * *the state has a duty to intervene to prevent unconstitutional discrimination* * * *." Id.,* 91 Cal.App.3d at 903–04, 154 Cal.Rptr. at 612 (emphasis added).

In addition to these broad constitutional mandates, a perusal of the California Education Code reveals that the State educational agencies are assigned numerous express ongoing responsibilities. Several statutes are applicable to the present action. For example, plaintiffs have raised allegations of discriminatory hiring and placement of school personnel. The State is given explicit authority to govern certain aspects of the employment of faculty and staff by local boards. California Education Code §§ 44100 *et seq.* (Deering 1978) (hereinafter all "Section" references will refer to the California Education Code) governs "Affirmative Action Employment" and is applicable to the State Department of Education, as well as to county and local instrumentalities. Therein, the State Department of Education is mandated, in Section 44104, to "*provide assistance to local educational agencies* in adopting and maintaining high-quality affirmative action programs" and to "develop and disseminate to public education agencies guidelines to assist such agencies in developing and implementing affirmative action employment programs." (Emphasis added.) In addition, Section 44105 states that the State Board of Education "*shall adopt all necessary rules and regulations* to carry out the intent of this article." (Emphasis added.) And, finally, Section 44102 states that each local agency must submit an affirmation of compliance to the Department of Education. These provisions seem to anticipate ongoing monitoring by the State Board, and although it is not given *express* enforcement powers, the intent of the legislation and the Board's inherent authority appear to provide it with the power and the duty to impose sanctions, where necessary, "to carry out the intent of [the] article." Even absent enforcement power, a failure by the Department of Education to perform its express duties could conceivably contribute to the wrongs of which plaintiffs complain. Whether or not any such delinquency occurred, and if so, whether it played a causative role in the injury allegedly sustained by plaintiffs, are questions of fact central to the lawsuit.

Plaintiffs have also raised questions with respect to the "educational merit" of certain school site selections. Again, the State has important direct responsibilities in this area. For example, the State Department

of Education establishes standards for school sites (Section 39000), and establishes rules and regulations to carry out the purposes of the Article (Section 39100). Moreover, the State Board is ordered to "advise the governing board of each * * * school district on the acquisition of new school sites, and after a review of the available plots give the governing board of the district in writing a list of the approved locations in the order of their merit *considering especially the matters of educational merit*, reduction of traffic hazards, and conformity to the organized regional plans * * *." Section 39101 (emphasis added).[6] If plaintiffs can demonstrate that the failure of the State to perform its duties contributed to the injury allegedly suffered, they are entitled to relief from the State Defendants.

Plaintiffs also contend that the state was delinquent in its duty to require nondiscrimination and desegregation prior to providing San Francisco schools with federal funds. Sections 12000 *et seq.* and 12100 *et seq.*, governing state participation in federal funding programs, require the State Board to ensure that recipients of the funds comply with provisions of federal acts. Failure to perform this duty might, as above, have contributed to plaintiffs' alleged injuries.

Finally, and most important, "equal educational opportunity" is at the heart of this action, which has been brought to effect desegregation of San Francisco's public schools. The Legislature imposes on the State Board of Education responsibilities for providing and enforcing the equal opportunity mandated by statute. Section 33570 *et seq.* establishes the Equal Educational Opportunities Commission, a state agency which "shall assist and advise the State Board of Education and shall formulate and present such policy recommendations as it determines necessary to insure equal educational opportunities for all students and *effect statewide coordination of*

*programs for education of disadvantaged minors."* Section 33575 (emphasis added).

▮ Furthermore, regulations adopted by the State Board of Education governing equal educational opportunity in Title 5, Chapter 7 of the California Administrative Code (Sections 90–101), entitled "Plans to Alleviate Racial and Ethnic Segregation of Minority Students," clarify the Board's role in overseeing the desegregation of California's schools. Although there are no express enforcement provisions, the regulations require the State to adopt "*uniform procedural requirements* for the development and updating of reasonably feasible plans for the alleviation of racial and ethnic segregation of minority students." Section 91(b) (emphasis added). The regulations include the following statement: "the State Board * * * finds that California school districts should proceed to implement this legal and educational obligation without the necessity of protracted and expensive court proceedings." Section 91(a). If private enforcement is to be avoided, the most likely alternative method of ensuring desegregation is enforcement by the State Board of the Department of Education. In conjunction with the above provisions, local boards are to submit statistics to the State Department of Education "sufficient to enable a determination to be made of the numbers and percentages of the various racial and ethnic groups of pupils and staff in every public school under the jurisdiction of each governing board." Section 97. With such information the State Board would have "constructive" knowledge of any violations or shortcomings by local districts. The mere fact that the State Board has undertaken to develop a set of regulations governing desegregation defeats the argument that the total responsibility in this area is with local school boards. The responsibility is shared with the State Board of Education.

In the context of the above-described constitutional and statutory scheme, the

---

6. The Court rejects the State Defendants' contention that this provision is inapplicable because San Francisco is governed by a City Board of Education. This limitation governs only Section 39101(f).

Court will now examine the contentions of the State Defendants. Although the State Defendants submit that the State has plenary authority over education, they attempt to distinguish and delimit their own responsibility in two ways: first, they contend that only the *Legislature* has plenary authority, and that their own power is limited to acts authorized by the Legislature, which has not authorized them to *enforce* policies of desegregation and nondiscrimination upon local districts. Second, they contend that even though the Legislature has *plenary authority* over education, it has delegated much of its power to local districts, which have the *primary responsibility* for education in the State of California. Thus, they conclude, they are not proper defendants in this action. This Court rejects both contentions.

◼ With respect to the State Defendants' first argument, it is clear that state administrators, rather than legislators, are the proper defendants in this action. It is the general and long-established rule that in actions for declaratory and injunctive relief challenging the constitutionality of a state *statute*, state officers with statewide functions under the challenged statute are proper parties defendant. *Serrano v. Priest*, 18 Cal.3d 728, 751–52, 135 Cal.Rptr. 345, 357–58, 557 P.2d 929 (1976) (hereinafter cited as "*Serrano II*"); *Tinsley v. Palo Alto Unified School District, supra*, 91 Cal. App.3d at 879, n.1, 154 Cal.Rptr. at 595, n.1. In such cases, the Legislature and the Governor are neither necessary nor proper parties because under the doctrine of separation of powers courts may not order the Legislature or its members to enact or not to enact, or the Governor to sign or not to sign, specific legislation. Moreover, administrative officers possess the requisite governmental interest to enable them adequately to advance the position of the State. It is in fact the *administration*, not the mere existence, of allegedly deficient laws which is challenged.

◼ Although the case at bar does not present a constitutional attack on *legislation*, it does, as in *Serrano*, challenge the administration of the educational system by state officers. If state officers are proper defendants in a challenge to legislation, the creation and existence of which is within the authority of the Legislature and Governor, *a fortiori*, they are proper parties in a suit challenging the administration of law, which falls within their own realm of authority. Indeed, the Legislature does not have administrative powers and could not provide the type of relief sought by plaintiffs. The State Defendants have not shown, other than through conclusory assertions, that state administrative officers are *not* authorized to enforce policies of nondiscrimination on the local level. And even assuming that were the case, it would still not, as the State Defendants suggest, make the Legislature a proper party defendant.

◼ The State Defendants' alternative argument, that they should be dismissed because local districts have *primary* responsibility for administration of education, is defective for at least two reasons: first, as already discussed, the State Defendants clearly have ongoing direct responsibilities, the breach of which may expose them to liability; second, the State Defendants might be held liable under an agency theory.

Thus, California courts have on numerous occasions found that the State has the ultimate supervisory power over education. As a corollary to this principle, it has also been held that local educational entities are mere agents of state authorities.

"[The education of the children of the state] is in a sense *exclusively* the function of the state which *cannot be delegated* to any other agency. * * * School *districts are agencies of the state* for the local operation of the state school system." *Hall v. City of Taft, supra*, 47 Cal.2d at 181, 302 P.2d at 577, quoting *Piper v. Big Pine School District*, 193 Cal. 664, 669, 226 P. 926 (emphasis added).

A district court in this state, affirmed by the Ninth Circuit, has similarly interpreted California law, holding that:

"In the public school system of the State of California the various local school districts enjoy a considerable degree of autonomy. Fundamentally, however, the people of the State have made the public school system a matter of State supervision. Such system is *not committed to the exclusive control of local governments.* Article IX, Constitution of California [other citations omitted]." *Mendez v. Westminster School District,* 64 F.Supp. 544, 547 (C.D.Cal. 1946), *aff'd* 161 F.2d 774 (1947) (emphasis added).

The State Defendants attempt to disavow any responsibility on their part for actions of local boards by focusing upon the "considerable degree of autonomy" exercised by local districts in the supervision of day-to-day affairs. For example, they cite *San Francisco Unified School District v. Johnson,* 3 Cal.3d 937, 92 Cal.Rptr. 309, 479 P.2d 669 (1971), wherein the California Supreme Court stated that "local boards historically and traditionally have undertaken the assignment of pupils to individual schools within the district." *Id.* at 952, 92 Cal.Rptr. at 317–18, 479 P.2d at 677. Similarly, they cite *Crawford v. Board of Education,* 17 Cal.3d 280, 130 Cal.Rptr. 724, 551 P.2d 28 (1976), wherein the Supreme Court held that "California school boards bear a constitutional obligation to take reasonably feasible steps to alleviate school segregation * * *." *Id.* at 289, 130 Cal.Rptr. at 729, 551 P.2d at 33. They are "so 'significantly involved' in the control, maintenance and ongoing supervision of their school systems as to render any existing school segregation 'state action' * * *. In California, *school boards* possess plenary authority to determine school assignment policies; to establish and reestablish geographic attendance zones; to determine where new schools will be built, what their size will be and what 'neighborhood' they will serve; to create or eliminate transfer options between schools; and to establish specialized programs that may attract particular students to particular schools." *Id.* at 294, 130 Cal.Rptr. at 732, 551 P.2d at 36 (emphasis added). None of the authorities cited by the State Defendants, however, purports to assign *exclusive* responsibility to local boards. For example, the second above-cited passage, the purpose of which was to establish that actions of local school boards constitute "state action," is ambiguous in its assignment of "plenary authority" to "school boards," and there is no reason to think that the language in *Crawford* was intended to imbue sole jurisdiction over the described functions to *local* boards, especially in the face of general authority to the contrary.

█ By focusing upon the activities of local boards, the State Defendants have ignored the concomitant responsibilities of State entities. Even assuming, *arguendo,* that local boards do have *primary* responsibility for education, they remain mere agents of state administrative bodies, which, as principals, at the very least share responsibility for education in California. In *Tinsley v. Palo Alto Unified School District, supra,* 91 Cal.App.3d at 902–03, 154 Cal.Rptr. at 611–612,[7] the court explicitly rejected defendants' "single entity" approach:

"[w]e must reject respondents' contention that the majority opinion in *Milliken* should furnish a guideline and precedent for the educational rights conferred on pupils of a minority race by the California Constitution. * * * We therefore bypass Chief Justice Burger's search for and emphasis upon a single entity responsible for some de jure segregation. Furthermore *it is clear that in California, as in Michigan, the responsibility * * * is with the state, not solely in the local entities it has created.*" (Emphasis added.)

Cases rejecting *respondeat superior* liability of the State are distinguishable. For

**7.** In *Milliken v. Bradley,* 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974), the Supreme Court established standards for the use of an interdistrict desegregation remedy. In the course of the opinion it characterized Michigan's school system as one based largely upon local control.

example, in *Gonzales v. California*, 29 Cal. App.3d 585, 105 Cal.Rptr. 804, 807 (1972), the court refused to find the State Board of Education vicariously liable for tortious acts committed by local school employees (who are deemed not to be state employees), holding that there is no liability under theories of *respondeat superior*, agency, or joint liability *unless based upon a duty provided by the Constitution or statute.* In the case at bar, the State's potential liability is clearly based upon duties created by statute and by the Constitution.

■ Thus, under California law, local boards of education are mere agents of state educational agencies. As such, their failures can, in some instances, be attributed to their principals.

Having found several ongoing duties imposed upon State agencies relevant to the claims raised in this action, the Court cannot at this point dismiss the State Defendants on the ground that they have *no* duties to remedy or prevent the allegedly discriminatory practices in the San Francisco public schools. Whether the actions or inactions of the State Defendants played a causative role in creating or maintaining the alleged harms is a question to be resolved at trial. Thus, the Court finds that under California constitutional and statutory law, the State Board of Education, Department of Education, and Superintendent of Public Instruction are proper defendants in an action alleging discriminatory and segregative practices in a local public school system.

### B. Federal Law

■ Federal courts have held on numerous occasions and in various contexts, under both federal and state law, that state entities may be liable for the failure of local school districts to desegregate. *See, e. g., Griffin v. County School Board of Prince Edward County*, 377 U.S. 218, 232, 84 S.Ct. 1226, 1233, 12 L.Ed.2d 256 (1964); *Cooper v. Aaron*, 358 U.S. 1, 16–17, 78 S.Ct. 1401,

1408–1409, 3 L.Ed.2d 5 (1958); ·*Brinkman v. Gilligan*, 503 F.2d 684, 704 (6th Cir. 1974), *rev'd on other grounds sub nom. Dayton Board of Education v. Brinkman*, 433 U.S. 406, 97 S.Ct. 2766, 53 L.Ed.2d 851 (1977); *United States v. Texas*, 447 F.2d 441 (5th Cir. 1971); *Penick v. Columbus Board of Education*, 429 F.Supp. 229 (S.D.Ohio 1977); *Reed v. Rhodes*, 422 F.Supp. 708, 793–95 (N.D.Ohio 1976); *Hart v. Community School Board of Brooklyn*, 383 F.Supp. 699 (E.D.N.Y.1974), *aff'd* 512 F.2d 37 (2d Cir. 1975); *Evans v. Buchanan*, 379 F.Supp. 1218, 1221–22 (D.Del.1974); *Oliver v. Kala-mazoo Board of Education*, 368 F.Supp. 143, 190–91 (W.D.Mich.1973), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975). Indeed, *Brown v. Board of Education*, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1954), mandated a statewide remedy.

Several courts have found liability under an agency theory, as discussed in the preceding paragraphs.[8] For example, in *Milliken v. Bradley*, 484 F.2d 215 (6th Cir. 1973), *rev'd on other grounds*, 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974), the Court of Appeals held the state derivatively responsible for the Detroit Board's violations on the theory that actions of Detroit as a political subdivision of the state were attributable to the state. (*See also*, concurring and dissenting opinions in the Supreme Court decision, 418 U.S. at 753–815, 94 S.Ct. at 3131–3161.) Similarly, in *Hart v. Community School Board of Brooklyn, supra*, 383 F.Supp. at 748, the court held that under the Fourteenth Amendment "the [school] board is an agency of the state. If the school board is found liable for racial segregation, then the state, as the principal whose agent the school board is, is also necessarily liable."

The cases most clearly applicable to the instant one are those wherein courts have found state responsibility for local, rather than statewide practices,[9] under a state ed-

---

**8.** Inapplicable, and therefore not cited, are the numerous cases using agency theory to establish the reverse principle, that local boards, as agents of the state, are subject to prohibitions of the Fourteenth Amendment.

**9.** Cases involving allegedly discriminatory statewide practices or statutes are distinguishable in that the remedy sought must *necessarily* be statewide.

ucational system similar to that in California. Perhaps most closely on point is *Milliken v. Bradley, supra*, involving the Michigan public school system, which the California Court of Appeals, in *Tinsley*, found strikingly similar to California's.[10] Although the majority opinion in *Milliken* avoided deciding the issue of state responsibility,[11] several strongly worded dissents, adopted in *Tinsley* as the "correct" view in California, agreed with the finding of the United States Court of Appeals for the Sixth Circuit that under a state-managed educational system state educational authorities could clearly be found liable for the failure of local districts to desegregate. Justice Marshall, paraphrasing the appellate court opinion, stated:

"The court concluded that responsibility for the segregation in the Detroit city schools rested not only with the Detroit Board of Education, but belonged to the State of Michigan itself and the state defendants in this case—that is, the Governor of Michigan, the Attorney General, the State Board of Education, and the State Superintendent of Public Instruction. While the validity of this conclusion will merit more extensive analysis below, suffice it for now to say that it was based on three considerations. First, the evidence at trial showed that the State itself had taken actions contributing to the segregation within the Detroit schools. Second, since the Detroit Board of Education was an agency of the State of Michigan, its acts of racial discrimination were acts of the State for purposes

of the Fourteenth Amendment. Finally, the District Court found that under Michigan law and practice, the system of education was in fact a *state* school system, characterized by relatively little local control and a large degree of centralized state regulation, with respect to both educational policy and the structure and operation of school districts." *Milliken v. Bradley, supra*, 418 U.S. at 786, 94 S.Ct. at 3147.

Also persuasive is another decision from the Sixth Circuit wherein the court found, both under federal and state law, that the Ohio State Department of Education has an affirmative duty to take all actions necessary, including, but not limited to, the withholding of state and federal funds to prevent and eliminate racial segregation in the public schools. *Brinkman v. Gilligan, supra*, 503 F.2d at 704.[12]

## IV.

Thus, under both federal and state principles the State must bear responsibility for actions of the local districts. Naturally, at a later point in the case it may become evident that State officials fully discharged their duties. For the present time, however, the State Defendants must remain in the case. Accordingly, their motion for dismissal or abstention is hereby DENIED.

---

10.  *Tinsley v. Palo Alto Unified School District*, 91 Cal.App.3d 871, 902–03, 154 Cal.Rptr. 591, 611–12 (1979). For example, the Constitution in Michigan, as in California, provides that "the legislature shall maintain and support a system of free public elementary and secondary schools * * *." The Constitution of the State of Michigan, Art. 8, § 2. The Michigan Supreme Court has stated, as has California's, that "[t]he school district is a State agency. * * * Education in Michigan belongs to the State * * *." *Milliken v. Bradley*, 418 U.S. 717, 726 n.5, 94 S.Ct. 3112, 3118 n.5, 41 L.Ed.2d 1069 (1974). *See also, id.* at 790–97, 94 S.Ct. at 3149–53. In contradistinction is a school system such as the one which existed in Virginia, where the power to operate schools was in the

exclusive jurisdiction of local boards, and each county had the option whether or not to operate public schools. *See id.* at 758, 94 S.Ct. at 3134 and cases cited therein.

11.  The majority opinion merely accepted *arguendo* the correctness of the lower courts' findings of state liability. *Milliken v. Bradley*, 418 U.S. 717, 748, 94 S.Ct. 3112, 3129, 41 L.Ed.2d 1069 (1974).

12.  Although Ohio law creates, perhaps, a more explicit duty on the part of the State Board of Education vis-a-vis local districts, the decision was based upon *federal* law as well as State principles.